## Case No. 3,778.

### The DELTA.

[Blatchf. Pr. Cas. 654.] [1]

Circuit Court, S. D. New York. July 17, 1863. [2]

PRIZE—BREACH OF BLOCKADE—PROCLAMATION OF APRIL, 1861—RIGHT TO WARNING.

1. Decree of the district court condemning vessel and cargo for an attempt to violate the blockade, affirmed.

2. Under the proclamation of blockade, of the president, of April, 1861, as construed by the supreme court, a neutral vessel is not entitled to a warning at the blockaded port, if her owner or master had previous knowledge or notice of the existence of the blockade; but, in the absence of such knowledge or notice, the master is entitled to make inquiry and receive the warning before condemnation can take place.

[Appeal from the district court of the United States for the southern district of New York.

[Prize. The vessel was condemned in the district court (Case No. 3,777), and the claimant appealed.]

NELSON, Circuit Justice. This vessel and cargo were captured, on the 27th of October, 1861, off the port of Galveston, Texas, by the United States ship Santee. At the time of her capture she was steering for that port, to make inquiry if it was under blockade, intending, if it was so found, to sail for Matamoras. She had on board a cargo of salt, and had left Liverpool about the 1st of September, bound for Matamoras, Mexico, the cargo to be delivered at the port of Minatitlan. J. A. Marsh, of Liverpool, a British subject, is owner of the vessel, and Charles W. Adams, of Boston, an American citizen, is owner of the cargo. The latter sold the vessel to the former at Liverpool, a few days before the commencement of the voyage, and took a mortgage back to secure the purchase money, and took also a charter of the vessel for the period of eighteen months.

It is urged, on behalf of the owners of the vessel and the cargo, that, at the time of sailing from Liverpool, in the fore part of September, 1861, neither the master nor the owners had any knowledge or notice of the actual blockade of the port of Galveston; that they only knew of the existence of the war, and of an intention to blockade the Confederate ports, by the proclamation of the president, in the April preceding; and that the change of course from Matamoras or Minatitlan to Galveston, was with a view to make inquiry and ascertain whether an actual blockade had been established at the latter port. I agree, that, upon the construction given by a majority of the supreme court to the terms and effect of the president's proclamation, the neutral ship is not entitled to a warning at the blockaded port, if the owner or master had previous knowledge or notice of the existence of the blockade; but, in the absence of such knowledge or notice, the master, as I understand the construction, is entitled to make inquiry, and receive the warning, before condemnation can take place. If it appears, in this case, that the owners or the master were not in possession of that knowledge at the time of the sailing of the Delta from Liverpool, I should be inclined to sustain the right of the master to steer for the port of Galveston, for the purpose and with the intention stated by him. But, as I understand the deposition in preparatorio of Taylor, who was the supercargo employed by Adams, the owner, at Liverpool, he expressly states that he knew that the port of Galveston was under blockade before the vessel left England. Kent, the steward, also testifies to substantially the same effect, in respect to his information. It also appears, from the deposition of the mate, Davidson, that, after the vessel reached the Gulf of Mexico, the captain changed his mind as to the course of the vessel, and called into consultation Taylor, the supercargo, and the mate, and then resolved to proceed to Galveston, instead of Matamoras or Minatitlan, and inquire if that port was blockaded, and had an entry to that effect made in the master's log-book, but not in the vessel's log-book, kept by the mate. As I have already stated, two of the persons engaged in the consultation admit that they knew, at the time they left Liverpool, that the port of Galveston was blockaded, and it is difficult to believe that the master was not also aware of the fact. It is suggested that the master learned on the voyage that negotiations for peace had taken place and were pending, but the suggestion is feebly sustained by the proofs in the case. I may add, that the circumstances attending the sale and mortgage of the vessel are calculated to excite suspicion in respect to the bona fides of the voyage. Upon the whole, after some hesitation, I am inclined to concur in the decree below [Case No. 3,777] both as to vessel and cargo.

DELVALLE (UNITED STATES v.). See Case No. 14,943.

DEMARCHI (UNITED STATES v.). See Case No. 14,944.

## Case No. 3,779.

### DEMARTINI v. AMBRAMOVIC.

[Cited in American Ballast Log Co. v. Cotter, 11 Fed. 729. Nowhere reported; opinion not now accessible.]

---

[1] [Reported by Samuel Blatchford, Esq.]
[2] [Affirming Case No. 3,777.]